Filed 10/13/20  P. v. Nielsen CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072234 |
| v. | (Super.Ct.No. SWF1700404) |
| RONALD WALKER NIELSEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

David Dworakowski, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Kristen Chenella and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ronald Walker Nielsen of one count of possession of child pornography and one count of misdemeanor child molestation.  (Pen. Code, §§ 311.1,

1

subd. (a), 647.6, subd. (a).)  He was sentenced to three years in prison for the possession conviction and a concurrent 180 days in jail for the child molestation conviction.

On appeal, Nielsen argues that the trial court abused its discretion and prejudicially erred by admitting evidence of uncharged prior sex acts and other prior conduct involving the same victim.  He also challenges the constitutionality of Evidence Code section 1108 (unlabeled statutory references are to this code), which allows for the admission of the uncharged prior sex acts.  We reject both arguments and therefore affirm.

BACKGROUND

Jane Doe was 18 years old when she testified at trial.  When she was eight years old, her mother met and started dating Nielsen.  Nielsen frequently visited Doe and her mother at their apartment in Virginia.

One night when Doe was eight or nine years old, she fell asleep with her hand down her pants.  Nielsen went into her bedroom and asked Doe why she was doing that, and she explained that it was comfortable.  Referring to Doe's vagina, Nielsen asked, "'Can I taste it[?]'"  She initially said "'no,'" but he continued asking, so she acquiesced but said that he could do so for only "three seconds."  Nielsen "put his tongue on [her] vagina" and "lick[ed]" for longer than three seconds.  Doe eventually was able to push his head out of her lap.  Doe did not tell her mother what happened because "[i]t didn't seem like that big of a deal" to Doe.  Doe thought that she remembered every "major" physical act that Nielsen had done to her.

2

The next major incident occurred when Doe was eight or nine years old and she, her mother, and Nielsen were staying at a hotel while on vacation in Virginia Beach, Virginia. While all three were in the hotel room, Doe had a lollipop. Nielsen was lying on the bed and told Doe to rub the lollipop "around like the shaft of his penis and lick it off," which she did for approximately 10 minutes until she "just got up and left."

When Doe was eight or nine years old, she once watched a pornographic movie in a hotel room with Nielsen and her mother. They made fun of the adult actors in the movie who were engaged in oral sex.

During the same timeframe, when Doe was eight or nine years old, Doe's mother took some photographs of Doe at Nielsen's direction. Nielsen directed Doe to "'[p]ut [her] shirt over [her] head and shake around'" and Doe's mother took a picture. Nielsen also told Doe to "'[p]ull [her] pants down and like wiggle [her] butt.'" There are two photographs of Doe's buttocks exposed with her shorts partially pulled down. In one of the photographs, Doe's head is pushed into Nielsen's lap, "where his penis would be," with Nielsen pushing her "head into his crotch" with one hand and holding her arms behind her back with his other hand. Doe's mother and Nielsen also told Doe to expose her vagina for the camera. In one photograph, Doe's head is covered by her shirt, and the lower half of her body, including her vagina, is exposed. In another, Doe is partially shielding her face with the shirt, but the rest of her body is exposed.

Nielsen eventually moved in with Doe and her mother in Virginia, where he "taught [Doe] how to French-kiss," which she described as "[k]issing with the tongue." While Doe and Nielsen were sitting together on the couch, he inquired if she had "'ever

3

kissed a boy.'" She told him that she had not, so he told her that she had to practice and he "put his tongue in [her] mouth." While living there, Nielsen also licked Doe's vagina one time after a father and daughter dance that occurred while she was in elementary or middle school. On a daily basis starting when Doe was eight years old through 2017, Nielsen would pat Doe on the buttocks and tell her that she was "the hottest of [her] friends."

From Virginia, the family moved to California, eventually settling in Murrieta. One Saturday morning in March 2017, Nielsen went into Doe's room while she was sleeping. She was awake lying on her stomach, but she pretended to be asleep. Nielsen rubbed her legs, including the inside of her legs, and also massaged her buttocks. Doe thought that Nielsen might also have kissed her, but she could not recall. She did, however, remember telling the police that he had kissed her somewhere. As Nielsen's hand or hands neared Doe's vagina, she became increasingly "uncomfortable," "turned around really quickly," and said, "'Okay, I'm up.'"

Later that day, Doe told a friend what had happened, and her friend convinced Doe to call a hotline. The person with whom Doe spoke on that call convinced Doe to talk to the police. A couple of days later Doe went to the police station. The morning before going to the police station, Doe searched Nielsen's computer "looking for something that [she] could use" as proof of what Nielsen had done to her. She was afraid that no one would believe her. In an electronic photo album, Doe found the photographs that Nielsen and her mother had taken of her when she was younger. Using her cell phone camera,

Doe took photos of the photographs on Nielsen's computer. There were five photographs total, and they were all shown to the jury.

Later that day, Doe spoke with police officers and gave them the photographs that she had taken on her cell phone. At the request of law enforcement, Doe called Nielsen and confronted him about what had occurred two days earlier and about past incidents. A recording of the phone call was played for the jury. Doe told Nielsen that it made her uncomfortable when he was "like touching [her] butt and stuff" and "touch[ing] [her] leg." He did not deny doing either of those things and instead responded "[y]eah" when Doe described him touching those parts of her body. He apologized, promised he would "never do it again," and explained, "I honestly did it because I thought you like arm and leg rubs." He denied kissing her inner thighs and explained that he had instead "kissed [her] calves" and her shoulder because he was being "super careful to try to not be inappropriate" or sexual with her.

When Doe asked him if he remembered what happened at Virginia Beach, he responded, "Yeah. That was—that was a completely different time and a very inappropriate situation." Doe then said, "I know, but you made me give you head. How is that okay?" Nielsen responded, "None of that was okay." She asked him why he had done that, and he responded, "Well, I—I don't even—I don't even know how to begin to—to dissect that." Nielsen said that he did not remember orally copulating Doe the first time but also said that he could not deny that it happened. With respect to the photographs, he said that there was nothing "sexual" about the photographs, and that they had been "just straight up joking."

5

DISCUSSION

Nielsen contends that the trial court abused its discretion and prejudicially erred under sections 1101, 1108, and 352 by allowing Doe to testify about prior uncharged sex offenses that Nielsen committed against her. We find no error.[1]

A. *Evidentiary Ruling*

Before trial, the People moved to admit under section 1108 evidence of prior uncharged acts Nielsen committed against Doe, and Nielsen opposed the motion. The trial court concluded that evidence of the incident in which Doe watched pornography with Nielsen and her mother was admissible under section 1101, subdivision (b). The court reasoned that the evidence was highly probative of whether Nielsen was "motivated by an unnatural or abnormal sexual interest in the child," an element of the molestation offense. The court found that there was "no undue prejudice" and that, to the extent there was any prejudice, it was outweighed by the "extremely high" probative value of the evidence.

As to evidence of the prior uncharged sex acts Nielsen committed against Doe, the court concluded that it was all admissible under section 1108 and section 1101, subdivision (b), and "highly relevant" to Nielsen's "conduct being motivated by [an] unnatural o[r] abnormal sexual interest in a child." The court again concluded that any

---

[1] We reject Nielsen's challenge to the constitutionality of section 1108. The Supreme Court has repeatedly rejected this same challenge. (*People v. Falsetta* (1999) 21 Cal.4th 903, 910-922 (*Falsetta*); *People v. Lewis* (2009) 46 Cal.4th 1255, 1288-1289; *People v. Loy* (2011) 52 Cal.4th 46, 60-61 (*Loy*); *People v. Molano* (2019) 7 Cal.5th 620, 664.) We are bound by those decisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

"chances of undue prejudice" were substantially outweighed by the probative value of the evidence.

B. *Admissibility of Evidence of Prior Uncharged Acts*

In general, "evidence of prior criminal conduct is inadmissible to show a defendant's predilection to commit other criminal acts." (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1074 (*Wang*); *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823 (*Daveggio*); § 1101, subd. (a)(1).) In cases involving sex offenses, however, section 1108 provides a legislative exception "to the general prohibition against propensity evidence." (*Wang*, *supra*, at p. 1075.) "Subdivision (a) of that section provides in pertinent part that 'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352 [permitting court to exclude evidence on weighing probative value and prejudicial impact].'" (*Falsetta*, *supra*, 21 Cal.4th at p. 911.) With evidence of prior sex offenses, the """"the presumption will be in favor of admission.""" (*Loy*, *supra*, 52 Cal.4th at p. 62, italics omitted.)

Apart from admissibility under section 1108, under section 1101, subdivision, (b), "evidence of a prior uncharged act may also be admissible to prove a disputed material fact—other than a criminal disposition—such as motive, intent, knowledge, or the absence of mistake or accident." (*Wang*, *supra*, 46 Cal.App.5th at p. 1075; *People v. Leon* (2015) 61 Cal.4th 569, 597 (*Leon*); § 1101, subd. (b).) The uncharged conduct must be relevant to proving some fact at issue, which "depends, in part, on whether the act is

7

sufficiently similar to the current charges to support a rational inference of intent, common design, identity, or other material fact." (*Leon*, *supra*, at p. 598.)

Before admitting such other crimes evidence under either section 1108 or subdivision (b) of section 1101, the trial court "must, by balancing the factors set forth in [section 352], determine whether the probative value of the evidence '"is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."'" (*Wang*, *supra*, 46 Cal.App.5th at p. 1075; *Leon*, *supra*, 61 Cal.4th at p. 598; *Falsetta*, *supra*, 21 Cal.4th at p. 911.) "'The "prejudice" referred to in [section 352] applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.) "'[T]he trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.)

C. *Analysis*

Nielsen first argues that the trial court abused its discretion under section 1101, subdivision (b), by allowing Doe to testify about watching pornography with her mother

and Nielsen when she was eight or nine years old.  He maintains that this prior uncharged offense was not "sufficiently similar to the charged molestation" in that it purportedly did not involve any sexual conduct and was too remote in time from the charged offenses.  The argument lacks merit.

Penal Code section 647.6, subdivision (a), "states a misdemeanor offense for every person who 'annoys or molests any child under the age of 18.'" (*People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).)  It requires "(1) conduct a '"normal person would unhesitatingly be irritated by"' [citations], and (2) conduct '"motivated by an unnatural or abnormal sexual interest"' in the victim." (*Ibid.*)  We therefore must analyze whether Nielsen's watching a pornographic movie with Doe when she was eight or nine years old was relevant to the conduct underlying this offense—Nielsen's entering Doe's bedroom when she was 16 years old and rubbing her legs, massaging her buttocks, and kissing some part of her body while she was sleeping.

In the recorded phone conversation Doe had with Nielsen about the incident in Doe's bedroom, Nielsen did not deny touching or kissing Doe.  He instead claimed that his conduct was not sexual in nature.  Watching pornography with Doe years earlier tends to show that he had a sexual interest in Doe at that time.  The jury could reasonably infer from the evidence of Nielsen's sexual interest in Doe when she was eight or nine years old that he continued to have an abnormal sexual interest in her.  That uncharged prior act evidence therefore was relevant to a material fact at issue—whether Nielsen's conduct in touching Doe when she was 16 years old also was """motivated by an unnatural or abnormal sexual interest.""" (*Lopez, supra*, 19 Cal.4th at p. 289.)

9

Given that the prior uncharged conduct of watching pornography with Doe was relevant to Nielsen's intent, it is immaterial that the prior conduct did not involve Nielsen touching Doe in a sexual manner and therefore was dissimilar in that regard to the underlying conduct. In order for evidence of uncharged conduct to be admissible to prove intent under section 1101, subdivision (b), the charged and uncharged conduct must be "'sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'"'" (*Leon*, *supra*, 61 Cal.4th at p. 598.) That standard is met with this evidence. One reasonable inference that can be drawn from the uncharged conduct and the charged conduct is that in both instances Nielsen possessed the same intent—gratifying an abnormal sexual interest in Doe. Thus, even though the uncharged conduct of watching pornography with Doe when she was a child did not involve Nielsen touching Doe in a sexual manner, it was sufficiently similar to the conduct underlying the misdemeanor child molestation charge for purposes of establishing Nielsen's intent.[2]

We reject Nielsen's contention that the pornography-viewing incident was somehow less relevant because of its remoteness from the underlying offense. He does not explain how the remoteness of the incident affected its relevance to Nielsen's state of mind. Nor do we see how the passage of time between the two incidents materially

---

[2] Relying on *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1119 (*Nguyen*), Nielsen maintains that the pornography-viewing incident was too dissimilar from the molestation offense to be admissible under section 1101, subdivision (b). *Nguyen* is inapposite because it involves the admissibility of uncharged nonsexual conduct under section 1108, not section 1101. (*Ibid.*)

diminished the prior incident's tendency to show that Nielsen harbored an abnormal sexual interest in Doe when she was 16 years old.

With respect to the evidence of other uncharged prior sex acts, Nielsen does not dispute that it was presumptively admissible under section 1108. He instead maintains that the probative value of the evidence was substantially outweighed by its prejudicial effect. We disagree. The uncharged sex offense evidence was highly probative of issues relevant to both of the charged offenses.

The prior uncharged sex acts included two alleged incidents in which Nielsen orally copulated Doe when she was eight or nine years old and one alleged act of her orally copulating him during the same time period. Like the pornography-viewing incident, this evidence is also highly probative of whether Nielsen had an abnormal sexual interest in Doe when he engaged in the conduct underlying the charged molestation offense. Perpetrating sex offenses against Doe while she was eight or nine years old tends to show that Nielsen had an abnormal sexual interest in Doe at that time, which supports the inference that Nielsen also had an abnormal sexual interest in Doe when she was 16 years old.

The prior uncharged sex acts evidence is additionally relevant to the child pornography possession offense. Nielsen and Doe's mother took the photographs at issue around the same time that the prior sex acts allegedly occurred, when Doe was eight or nine years old. In those photographs, Doe was unclothed and exposed her genitalia, and Nielsen was pushing her head into his crotch. During the phone conversation with Doe after she contacted law enforcement, Nielsen claimed that those photographs were not

11

sexual in nature and that he and Doe's mother had just been "joking" when the photographs were taken. Evidence that during the same period that the photographs were taken Nielsen also committed sex offenses against Doe is therefore highly probative of whether those photographs depicted "a person under the age of 18 years personally engaging in or personally simulating sexual conduct." (Pen. Code, §§ 311.1, subd. (a), 311.4, subd. (d)(1).)

Nielsen challenges the probative value of the prior uncharged sex acts evidence on the basis of the purported dissimilarity between the uncharged acts and the charged molestation offense. Section 1108 does not require that the prior sex acts bear any similarity to the charged offense. (*Daveggio*, *supra*, 4 Cal.5th at p. 825 ["evidence of even extremely dissimilar offenses may be admitted under section 1108"]; *Loy*, *supra*, 52 Cal.4th at p. 63 ["'[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under [section 1101], otherwise [section 1108] would serve no purpose'"].) In any event, the prior uncharged sex acts are not entirely dissimilar from the charged offense. They all involve the same victim and thus tend to show that Nielsen possessed an "abnormal sexual interest" in Doe—both when she was eight or nine years old and when she was 16 years old. That inference is further supported by Doe's testimony that on a daily basis Nielsen patted her on the buttocks and commented on her physical attractiveness, starting when Doe was eight years old and continuing to the time of the charged offenses.

Nielsen again argues that the probative value of the prior uncharged sex acts evidence was diminished for purposes of Nielsen's propensity to commit a sex offense

12

against Doe when she was 16 years old because of the temporal remoteness of the acts, and we again disagree. It is true that "[r]emote prior conduct is, at least theoretically, less probative of propensity than more recent misconduct." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 534.) But here the strength of the inference that Nielsen possessed an abnormal sexual interest in Doe is not diminished by the passage of time since the prior acts were committed. Instead, the evidence supports an inference that Nielsen possessed the same abnormal sexual interest in Doe over time. Moreover, even if the remoteness affected the probative value of the evidence as to Nielsen's intent for the molestation offense, the timing of those acts makes them especially relevant to the child pornography possession offense because the photographs were taken around the same time that those acts allegedly occurred.

Nielsen questions whether the prior uncharged sex acts had any probative value because evidence of those acts was provided by Doe and purportedly uncorroborated. He relies on *People v. Stanley* (1967) 67 Cal.2d 812, 817 (*Stanley*) for the proposition that the trial court could not allow the victim to testify about prior uncharged and uncorroborated sex acts committed against her. *Stanley* is inapposite. Nielsen corroborated that most of the prior acts occurred. During the telephone conversation with Doe, he admitted that something had happened in Virginia Beach, did not deny he "made [Doe] give [him] head," and said that what happened was "very inappropriate." He also did not deny orally copulating Doe when she was eight or nine years old even though he could not recall the incident.

13

Nielsen argues that the prejudicial effect of the prior acts evidence (including the pornography viewing incident) greatly outweighed its probative value. He focuses on the fact that the uncharged sex acts "are far more inflammatory than the charged offenses" and that he was never charged or punished for those acts. Nielsen does not point to anything in the record suggesting that the jury was inclined to punish him for committing the prior uncharged sexual offenses instead of, or in addition to, the charged offenses, or that the jury was confused by that evidence. The prior uncharged sex offenses did involve more egregious misconduct than the charged offenses, and Doe's testimony about that prior conduct was "undoubtedly damaging." (*Daveggio*, *supra*, 4 Cal.5th at p. 826.) Evidence of prior uncharged sex offenses "inevitably has some prejudicial effect. But under section 1108, this circumstance alone is no reason to exclude it." (*Loy*, *supra*, 52 Cal.4th at p. 62.) Given the very high probative value of the evidence of Nielsen's prior conduct to both of the charged offenses, "we cannot say that the trial court abused its discretion when it concluded that the danger of undue prejudice did not substantially outweigh the probative value of the testimony." (*Daveggio*, at p. 826.)

Finally, we reject Nielsen's contention that *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*), compels a different result. "Because of the 'broad discretion' trial courts have under section 1108 [citation], a finding of no abuse of discretion in one court's exclusion of evidence has no bearing on whether a different court abused its discretion in admitting evidence in a different trial." (*Loy*, *supra*, 52 Cal.4th at p. 64.) In any event, *Harris* bears no resemblance to the facts here. The 23 year old prior sex offense did not involve the same victims as the charged offenses. (*Harris*, *supra*, 60

Cal.App.4th at pp. 738-739.) "Nothing in *Harris* compels the conclusion that the court abused its discretion in admitting the evidence here." (*Loy*, at p. 64.)

For all of these reasons, we conclude that the trial court did not abuse its discretion by admitting evidence of the prior uncharged acts.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____<br>J.

We concur:

MILLER _____
        Acting P. J.
CODRINGTON _____
                J.